## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | | |
|---|---|---|
| KAREN E.  MORRISS | § | |
| | § | |
| V. | § | A-05-CA-043 LY |
| | § | |
| CONCORDIA UNIVERSITY AT AUSTIN | § | |
| and THE BOARD OF REGENTS OF | § | |
| CONCORDIA UNIVERSITY | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment filed on January 17, 2006 (Clerk's Doc. No.  14), Plaintiff's Response (Clerk's Docket No. 15)  filed on January 31, 2006, and Defendants' Reply (Clerk's Docket No. 17) filed on February 13, 2006.

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.  General Background

Plaintiff Karen Morris ("Plaintiff") was employed as an accounting assistant/cashier at Concordia University at Austin (the "University") in Austin, Texas from October 21, 2001, until her termination on July 28, 2004.  Plaintiff alleges that she was terminated because of her age (Plaintiff was 54 years-old at the time of her termination) and was replaced by a younger employee in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.,* and the Texas

Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.101 (Vernon 2004). Accordingly, on January 24, 2005, Plaintiff filed the instant lawsuit against Concordia University and its Board of Regents (hereinafter referred to as "Defendant") alleging age discrimination claims under both the ADEA and TCHRA, and seeking damages in the form of back and front pay, reinstatement, liquidated damages, and attorney's fees.

Defendant has now filed the instant Motion for Summary Judgment arguing that Plaintiff has failed to make out a *prima facie* case of age discrimination under the ADEA. Defendant further argues that even if Plaintiff had alleged a *prima facie* case of age discrimination it would still be entitled to summary judgment because it has asserted legitimate, nondiscriminatory reasons for terminating Plaintiff. Specifically, Defendant contends that it terminated Plaintiff not because of her age but because of Plaintiff's: (1) insubordination and failure to follow instructions and orders from her supervisors; (2) failure to perform her job duties; and (3) failure to comply with the University's policies regarding overtime. Defendant argues that Plaintiff has failed to rebut these legitimate, nondiscriminatory reasons for her termination and that, therefore, it is entitled to summary judgment in this case.

.                             **II.  STANDARD OF REVIEW**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Coleman v. Houston*

*Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material fact is presented, and summary judgment is inappropriate. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995). Rather, the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986)). Applying these standards, the Court turns to the merits of the motion for summary judgment.

## III.  ANALYSIS

### A.    Burden Shifting under the ADEA

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §

623(a)(1).[1]  In analyzing a claim under the ADEA, a court must engage in a burden-shifting analysis. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir.  2004).  Under such analysis, the Court must first determine whether the plaintiff has established a *prima facie* case of age discrimination. A claimant can establish a *prima facie* case by showing that: (1) at the time she was terminated, she was a member of the class protected by the ADEA ("individuals who are at least 40 years of age");[2] (2) she was qualified for the position at issue; (3) she was terminated from that position; and (4) she was replaced by someone younger or outside the protected group or was otherwise discharged because of her age.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *Rachid,* 376 F.3d at 309.   If the plaintiff establishes a *prima facie* case of discrimination, the burden of production then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for its actions.  *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  If the employer meets its burden of production, the presumption of discrimination created by the *prima facie* case drops out of the picture and "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' was the plaintiff's protected characteristic

---

[1]Plaintiff has alleged age discrimination claims under both the ADEA and the TCHRA. Because the TCHRA's age discrimination provision, is "substantively identical" to the ADEA, the same analysis applies to both of Plaintiff's claims. *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir.  2005);  *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

[2]29 U.S.C. § 631(a).

(mixed-motive[s] alternative)." *Rachid*, 376 F.3d at 312 (citation and internal quotations omitted).[3]

If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls

to the defendant to prove that the same adverse employment decision would have been made

regardless of discriminatory animus.  If the employer fails to carry this burden, plaintiff prevails.  *Id.*


Applying the above-standards, the Court will now determine whether Plaintiff has alleged a

viable claim of age discrimination under the ADEA.

**B.     Has Plaintiff established a *prima facie* case of age discrimination?**

As noted, in order to prove a *prima facie* case of age discrimination under the ADEA,

Plaintiff must demonstrate that (1) at the time she was terminated, she was at least 40 years of age;

(2) she was qualified for the position at issue; (3) she was terminated from that position; and (4) she

was replaced by someone younger or outside the protected group or was otherwise discharged

---

[3]The last stage of the burden-shifting framework was slightly modified by the Fifth Circuit in *Rachid* in response to the Supreme Court's holding in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), holding that a plaintiff does not need direct evidence to obtain a mixed motive analysis. *Rachid*, 376 F.3d at 312.  Before *Desert Palace*, ADEA cases were bifurcated into two groups:  (1) those cases in which the plaintiff relies on direct evidence to establish his claim; and (2) those cases in which the plaintiff relies only on circumstantial evidence. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).  Cases in the former category were analyzed under the *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "mixed-motive" framework, under which the plaintiff was required to produce direct evidence that discriminatory animus was a motivating factor in the employment decision at issue. *Id.*  In response, the defendant was required to prove that it would have taken the same action regardless of discriminatory animus. *Id.*  Cases in the latter category, however, were analyzed under the well-known *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "burden-shifting" framework.  Although the *McDonnell Douglas* framework is similar to the burden-shifting framework identified in *Rachid*, the *McDonnell Douglas* analysis does not contain the mixed motive alternative in the third stage. *See id.*  After the Supreme Court decided *Desert Palace*, however, the Fifth Circuit modified the traditional *McDonnell Douglas* "burden-shifting" framework as discussed in *Rachid*.

because of her age. *Reeves*, 530 U.S. at 142; *Rachid*, 376 F.3d at 309. Since Plaintiff was 54 years-old at the time, it is undisputed that Plaintiff was over the age of 40 at the time of her termination.[4] Defendant, however, attacks the second and fourth prongs of Plaintiff's *prima facie* case, arguing that Plaintiff was not qualified for her position and that she was not "replaced" by a younger male employee.

### (1) Was Plaintiff replaced by a younger individual?

In Plaintiff's Complaint, Plaintiff alleges that after the Defendant terminated her, Defendant replaced her with "a white male approximately twenty-two (22) years of age." Plaintiff's Complaint at 2. Defendant, however, contends that the "white male" at issue – Michael Westphal – did not actually replace Plaintiff as an accounting assistant/cashier, but rather was hired to fill the separate position of General Ledger Accountant. While Defendant is correct that Mr. Westphal was not hired to fill Plaintiff's position,[5] that fact is irrelevant to Plaintiff's *prima facie* case since the undisputed summary judgment evidence shows that Plaintiff was actually replaced by a different "younger individual," not Michael Westphal, but Krista Smith.[6]   The evidence shows that one day after

_____

[4]Plaintiff was born on September 19, 1949.  Tr. of Plaintiff's Deposition at 7, Exh. R to Plaintiff's Response.

[5]The evidence shows that Defendant hired Michael Wesphal, a college graduate with a bachelor's degree in accounting, on July 12, 2004, to fill the newly-created position of General Ledger Accountant in the Accounting Department.  Goodwin Aff. at 5.  Defendant points out that Plaintiff was a high school graduate who primarily performed customer service duties in her position. *Id.*

[6]In its attempt to disprove Plaintiff's *prima facie* case and demonstrate that Mr. Westphal did not replace Plaintiff, Defendant admits that it replaced Plaintiff with Krista Smith.  In its Motion, Defendant states the following: "The final proof that Westphal did not replace Morriss is the fact that a new cashier actually was hired. . . .Krista Smith, a recent college graduate." Defendant's MSJ at 8.  Although Defendant has admitted that it replaced Plaintiff with a younger individual, *see id.*, Defendant argues that Plaintiff has waived any reliance on Krista Smith to support her *prima facie* case since Plaintiff has not amended her Complaint to reflect that Krista Smith, not Michael Westphal

terminating Plaintiff, Defendant hired Krista Smith, a recent college graduate, as a temporary employee to fill the vacant cashier position. Affidavit of Cynthia Goodwin at 8, Exhibit 2 to Defendant's MSJ. Although Ms. Smith was initially hired as a temporary employee, Defendant hired her on as a permanent employee a few months later and kept Ms. Smith in the cashier position. Accordingly, there is sufficient evidence in the record to show that Plaintiff was replaced by a younger individual.

### (2) Was Plaintiff qualified for the position?

Defendant further argues that Plaintiff was no longer "qualified" for her position at the time of her termination in July 2004. Specifically, Defendant contends that Plaintiff was no longer qualified for her position as an Accounting Assistant/Cashier because Defendant avers that Plaintiff was insubordinate and disrespectful to her superiors, failed to follow directives from her supervisors, worked more than 90 hours of unapproved overtime and neglected some of her job duties. While this type of evidence is clearly relevant to whether a defendant has proffered a legitimate nondiscriminatory reason for an adverse employment action, the Fifth Circuit has specifically rejected the argument that an employer can defeat an employee's *prima facie* case simply by claiming that supervisors became unsatisfied with the employee's work. *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d

---

replaced her. The Court rejects any argument that Plaintiff waived her ability to rely on Krista Smith in support of her *prima facie* case because she failed to mention Smith's name in her Complaint. Plaintiff is not attempting to add a new claim in this case and the fact that Krista Smith was ultimately hired to replace Plaintiff is no surprise to the Defendant. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (finding that the Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests"). Moreover, both parties have relied on summary judgment evidence showing that Krista Smith replaced Plaintiff in support of their respective arguments before this Court and the Court will, therefore, rely on such evidence in its determination of whether Plaintiff has alleged a *prima facie* case of age discrimination.

1503, 1505-06 (5th Cir. 1988).  In *Bienkowski*, the Fifth Circuit explained that to place a plaintiff's

qualifications at issue in both the *prima facie* case and the pretext stage of analysis is "an unnecessary

redundancy." *Id.* at 1505.  In holding that the defendant could not argue dissatisfaction with plaintiff's

work at the *prima facie* stage of the case, the Circuit stated the following:

> a plaintiff challenging his termination or demotion can ordinarily establish a *prima facie* case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.  The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.

*Id.* at 1506.  The Court explained that "necessary qualifications" in the context of establishing a *prima facie* case means simply that the plaintiff has not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered her unfit for the position for which she was hired.  *Id.* at n. 3.  In other words, necessary qualifications for a job are *objective* factors such as degrees, certificates, skills and experience, as opposed subjective criteria which are not considered at the *prima facie* stage of the case.  *Taylor v. County Bancshares, Inc.,* 325 F. Supp.2d 755, 770 (E.D. Tex. 2004).  See also, *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 681 (5th Cir. 2001) (because subjective criteria can be used to mask discriminatory intent, "an employee must demonstrate that he meets objective . . . criteria at the *prima facie* case stage, and the issue of whether he meets subjective . . . criteria is dealt with at the later stages of the analysis").  Therefore, Plaintiff need only show that she was *objectively qualified* to hold the position from which she was terminated in order to satisfy this element of her *prima facie* case.

The Court finds that Plaintiff has presented sufficient evidence that she was qualified to perform the position of Accounting Assistant/Cashier.  The University hired Plaintiff in October 2001,

to fill the position of Accounting Assistant/Cashier.[7] Plaintiff's official job duties included cashiering, data entry, answering voice mail for student accounts, answering and directing accounting office phone calls, sending out bills and statements, cutting checks, filing, distributing mail, and working on special projects for the Director of Accounting.  *See* Exhibit A to Plaintiff's Response to MSJ. Defendant has failed to offer any evidence that Plaintiff was less objectively qualified for her position at the time of her termination than when she was initially hired.  Because the Court finds that it would be redundant to address Defendant's subjective reasons for terminating Plaintiff under the *prima facie* case, the Court finds that Plaintiff has established that she was "qualified" for the position from which she was terminated and has thus made out a *prima facie* case of age discrimination under the ADEA.

**C.    Has Defendant asserted a legitimate, nondiscriminatory reason for terminating Plaintiff?**

Because Plaintiff has established a *prima facie* case of age discrimination, the burden of production now shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action which occurred.  It is important to note that the Defendant's burden at this point is one of production, not persuasion, and involves no credibility assessments.  *Reeves*, 530 U.S. at 143.  Thus, Defendant need not persuade the Court that it was actually motivated by the proffered reasons; rather, it is sufficient if the Defendant's evidence raises a genuine issue of fact as to whether it discriminated against the Plaintiff.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  "If the employer produces any evidence 'which, taken as true, would permit

---

[7]The title of Plaintiff's position evolved over time from "Accounting Assistant" to "Accounting Assistant/Cashier," and finally to "Cashier."  *See* Exhibit C to Plaintiff's Response to Defendant's MSJ.

the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)).

Defendant asserts that it terminated Plaintiff, not because of her age, but because she was insubordinate and disrespectful to her superiors, failed to follow directives from her supervisors, worked more than 90 hours of unapproved overtime, and neglected her job duties.  These are all legitimate, nondiscriminatory reasons for an employer to terminate an employee.  For example, courts have found that insubordination, intemperate behavior and failing to follow direct orders of a supervisor are  all legitimate reasons for an employer to take an adverse employment action against an employee.  *See e.g., Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 408 (5th Cir. 1999) (finding that charge that employee got along poorly with her fellow employees was a legitimate, non-discriminatory reason for her termination); *Chaney v. New Orleans Public Facility Mangt., Inc.*, 179 F.3d 164, 167-68 (5th Cir. 1999) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee."), *cert. denied*, 529 U.S. 1027 (2000);  *Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) (holding that "an employee's insubordination toward supervisors and coworkers, even when engaged in a protected activity, is justification for termination").  In addition, the Fifth Circuit has held in numerous cases that poor job performance is a legitimate reason for taking an adverse employment action, such as discharge, against an employee.  *See e.g.,  Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005) (finding that employer sustained its burden by alleging that employee was terminated due to inadequate job performance and his refusal to adapt and modify his business plan); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991) (holding that poor job performance was a

legitimate nondiscriminatory reason for the employee's termination).  In fact, "even an incorrect belief

that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason."

*Little,* 924 F.2d at 97.  Lastly, courts have found that an employee's abuse of unauthorized overtime

work is also a legitimate, nondiscriminatory reason for an adverse employment action.  *See e.g.,*

*Benjamin v. Katten, Machin & Zavis,* 2001 WL 505967 (7th Cir.) (finding that employer's complaints

of employee's tardiness, failure to complete tasks, refusal to follow department procedures, and

unauthorized overtime were legitimate, nondiscriminatory reasons for the employee's termination),

*cert. denied*, 534 U.S. 895 (2001);  *Mitchell v. Espy*, 845 F. Supp. 1474, 1493 (D. Kan. 1994)

(holding that employee did not prove that agency's proffered nondiscriminatory reasons of abuse of

overtime authorization, insubordination, uncooperative work behavior, and failure to comply with

authorized instructions of supervisor were pretexts for discrimination).

   Defendant has provided the Court with a plethora of summary judgment evidence in support

of its asserted legitimate, nondiscriminatory reasons for terminating Plaintiff.  During the time that

Plaintiff was employed at the University, Plaintiff's direct supervisor was Cynthia Goodwin, who was

the director of the administrative accounting department at the University.[8]  The evidence shows that

during the months preceding her termination, Plaintiff was repeatedly insubordinate and disrespectful

to Goodwin and failed to comply with Goodwin's direct orders.  For example, on March 19, 2004,

Goodwin met with Plaintiff to discuss Plaintiff's annual performance review which Goodwin had just

completed. Goodwin Aff., Appendix to Defendants' MSJ at Tab 2.  Goodwin believed that Plaintiff

had performed well over the last year and was happy that Plaintiff had made a significant

---

[8]Goodwin Aff. at 1, Appendix to Defendant's MSJ at Tab 2.

improvement in her job performance compared to her two prior reviews. *Id.*[9] Thus, Goodwin rated

Plaintiff with medium to high marks in most of the categories and added such glowing comments as

noting that "[Plaintiff] does a spectacular job of keep[ing] up with the receipt binders and maintaining

the appropriate info. in them," and also that Plaintiff had come up with some "great ideas" for keeping

track of payment forms.  Appendix to Defendant's MSJ, Tab 1, at Exh. 6.[10]

Despite the positive tone of the review and the glowing comments contained therein, Plaintiff

was disappointed with her review and believed that Goodwin should have given her better marks.

Although Plaintiff did not voice her disappointment to Goodwin at the time of her meeting with

Goodwin, shortly thereafter Plaintiff engaged in a pattern of insubordination directed toward

Goodwin.  For example, Plaintiff ignored numerous requests from Goodwin to return a signed copy

of Plaintiff's review, along with any of Plaintiff's comments, to Goodwin by the set deadline.

---

[9]Plaintiff's first performance review (conducted one month after she was hired) was well below average.  Goodwin found that Plaintiff had performed only three out of her twelve job duties and Plaintiff was therefore placed on probation due to her substandard job performance. Appendix to Defendants' MSJ, Tab 1 at Exhibits 4 & 5.

[10]Goodwin gave Plaintiff medium to high marks in eight of the fifteen categories (accuracy, adherence to work schedule, creativity drive, job knowledge, personal appearance, positive use of supervision, relationship with staff, reliability and stability), high marks in four categories ( courtesy, friendliness, housekeeping, and personality) and an average mark in the category of alertness. Appraisal at 1-4.  Under the "Major Strengths and Weaknesses" section, Goodwin noted that Plaintiff's strengths included "her great customer service (goes beyond the call of duty)," "very ethical," a "team player," and that "her suggestions on making things run better are greatly appreciated." Appraisal at 4.  The only "weakness" noted by Goodwin was that Plaintiff "should become more familiar with querying, copying and other shortcut functions in Banner to increase her speed on receipts, etc. entry." *Id.*  Goodwin concluded the Appraisal by listing Plaintiff's short-term goals which included (1) becoming more familiar with the billing process (going after the delinquent, using population selections to run bills), (2) continuing to learn more about financial aid to better assist students and communicate with such aid (especially re: outside scholarships/employer reimbursements, etc.), and (3) creating "Banner process and AR policy manual." *Id.*

Goodwin Aff. at 2.  Not only did Plaintiff fail to comply with Goodwin's initial request to return to Goodwin the signed review by the original deadline (approximately one week after Plaintiff's performance review meeting on March 19th), but Plaintiff also failed to comply with several subsequent requests to submit the signed review to Goodwin.  *Id.*  In fact, Plaintiff waited some three months to respond to her Appraisal.  Finally, on May 17, 2004, Plaintiff submitted to Goodwin an unsigned copy of the Appraisal along with a signed letter containing unprofessional and disrespectful comments addressed to Goodwin.  Exhibit G to Plaintiff's Response to MSJ.  For example, Plaintiff declared that "I do not need constant direct supervision, I know my job very well and will ask for help when needed," and added that Goodwin did not have the "moral right" to evaluate her.  *Id.*  The letter also noted that Plaintiff did not believe the review to be "just and furthermore, I do not accept this appraisal." *Id.*  Finally, the letter averred that other employees would have been more qualified than Goodwin to complete Plaintiff's performance review.  *Id.*

Because Goodwin believed that Plaintiff's review had been a "good one" and was a clear improvement over her last two reviews, Goodwin was a bit perplexed over Plaintiff's reaction to the review.  Goodwin Aff. at 3.   Because Goodwin construed the tone of Plaintiff's letter to be inappropriate and showed a "lack of respect for my authority as her supervisor," she met with Plaintiff on May 18, 2004, to discuss Plaintiff's complaints.  *Id.*  During that meeting, Goodwin informed Plaintiff that she had done a good job during the last year and explained that the purpose of the written review was merely to point out areas where Plaintiff performed well and other areas in which Plaintiff could improve on.  Regardless, however, Plaintiff insisted that she deserved better ratings and failed to show any interest in hearing Goodwin's explanations for the Appraisal. Appendix to Defendants' MSJ, Tab. 1 at Exh.  6.

On June 3, 2004, approximately two weeks after sending Goodwin the above letter, Plaintiff once again voiced her opinions in an unprofessional manner directed toward Goodwin. Specifically, after Plaintiff observed Goodwin discussing certain financial aid information with the financial aid director, Plaintiff informed Goodwin that Goodwin "talked too much." Goodwin Aff. at 3.

On June 7, 2004, Goodwin informed Pamela Lee, Vice President of Business Services, of Plaintiff's recent inappropriate behavior. Appendix to Defendants' MSJ, Tab 2 at Exh I. Shortly thereafter, Goodwin scheduled a mediation with Plaintiff "since I did not think that [Plaintiff] and I could resolve our differences alone regarding our work relationship." Goodwin Aff. at 4. However, Plaintiff failed to show up for the scheduled mediation on June 15, 2004.[11]

After Plaintiff failed to report to work and attend the scheduled mediation, Goodwin placed Plaintiff on 30 days of probation. Exhibit N to Goodwin Aff. The probationary letter informed Plaintiff that she had to make certain changes in her conduct and attitude over the next 30 days in order to remain employed at the University, such as demonstrating a willingness to recognize the authority of Goodwin and showing her professional respect, as well as improving the ability to follow directions given by Goodwin. *Id.* The letter also informed Plaintiff that an employment mediator would be available to meet with Plaintiff and Goodwin the following week on June 22, 2004. *Id.* In response to the probationary letter, Plaintiff informed Goodwin that she would in fact contact the

---

[11]After taking the previous Thursday and Friday off for dental surgery, Plaintiff requested to be off for a "personal day" on Monday, June 14, 2004, which Goodwin approved. *Goodwin Aff.* at 4. On the afternoon of June 14th, Plaintiff called Goodwin to request an additional personal day on June 15, 2004. *Id.* Goodwin denied Plaintiff's second request, however, because Plaintiff's lengthy absence had created a backlog in the accounting department and because the mediation was scheduled for that day. *Id.* Regardless, however, Plaintiff failed to report to work on June 15th and thus failed to attend the scheduled mediation. *Id.*

mediator as requested, but added "I don't know why?"[12]  In addition, Plaintiff declared that she had "no clue what your [Goodwin's] two demands are in light of the personnel evaluation of 3/18/2004 and asked "What am I MISSING? What do you want?" *Id.*  (emphasis in original).

On June 21, 2004, the day before the second scheduled mediation, Plaintiff sent Goodwin an e-mail objecting to the mediation the next day on the basis that she would not have enough time to prepare for the joint mediation and asked "[a]re there valid reasons for the urgency of meeting again so quickly?" Exhibit L to Plaintiff's Response.  That same day, Plaintiff sent Goodwin another e-mail informing her that she would be taking off the rest of the day.  Plaintiff was also absent from work on part of June 22, and for the full days of June 23-25. Defendants' Appendix at Tab 7.  Accordingly, the second scheduled mediation never took place.

In addition, Plaintiff continued to engage in unprofessional and disrespectful conduct directed toward Goodwin and failed to comply with her direct orders.  For example, on July 14, 2004, Goodwin sent an e-mail to Plaintiff (in response to an e-mail from Plaintiff complaining about being backlogged) suggesting that Plaintiff prioritize her work and obtain assistance from others.  Exhibit R to Goodwin Aff.  In response, Plaintiff stated curtly "I do know  how to prioritize. These are things one learns owning their own business where that person had to do everything, which I have done more than once in my life." *Id.*

Plaintiff also failed to comply with Goodwin's direct orders regarding unapproved overtime. Concordia has a policy based on the Fair Labor Standards Act requiring employees to obtain advance approval from a supervisor before working any overtime hours, and the policy prohibits voluntary, unpaid overtime.  The evidence shows that despite numerous warnings between 2002 and 2004

---

[12]Plaintiff's letter dated June 16, 2004, Exhibit O to Goodwin Aff.

directing Plaintiff not to work unapproved overtime, Plaintiff worked more than 90 hours of unauthorized overtime in 2004 and failed to turn in any time-sheets reflecting the overtime. Goodwin Aff. at 6-7. For example, on July 13, 2004, Goodwin met with Plaintiff to discuss her probationary status and directed Plaintiff to turn in her complete time-sheets showing any unpaid overtime hours. *Id.* at 6. Because Plaintiff failed to turn over all of her time-sheets, Goodwin sent her another e-mail on July 19, 2004, directing Plaintiff to resubmit her time-sheets with all overtime included. When Plaintiff submitted her "complete" time-sheets to Goodwin on July 23, 2004, the time-sheets showed that Plaintiff had worked over 70 hours of unapproved overtime in 2004. Appendix to Defendants' MSJ, Tab 1 at Exh. 15. In addition, Plaintiff told Goodwin that she had worked even more overtime hours not included in the time-sheets but told Goodwin not to worry about compensating her for it. Goodwin Aff. at 6. After discussing the matter with her supervisor, Pamela Lee, Goodwin ordered Plaintiff to turn over the complete time-sheets by July 28, 2004, so that Plaintiff would be compensated for all of her overtime. *Id.* However, Plaintiff failed to submit her complete time-sheets by this deadline and did not do so until Pamela Lee again ordered her to do so. *Id.* at 6-7.

The evidence further shows that Plaintiff failed to comply with her supervisor's direct orders regarding specific work practices during the year 2004. For example, in May 2004, Goodwin directed Plaintiff to include clear, specific instructions with the tuition statements in order to adequately inform students of the proper process for paying their tuition. Goodwin Aff. at 3-5. Goodwin further asked Plaintiff to give Goodwin copies of the documents being sent out to students with their tuition statements, including cover letters, so that Goodwin could review such documents before they were actually sent out. Exhibit J to Goodwin Aff. Despite Goodwin's request, Plaintiff failed to show Goodwin a copy of the cover letter before she mailed them out to students. *Id.* Shortly

thereafter, the University received complaints from several students regarding the confusing billing information they had received in the mail.  Exhibits K and L to Goodwin Aff.

In addition to failing to follow her supervisor's direct orders, Plaintiff also had difficulty keeping up with her job duties in the summer of 2004.  The summary judgment evidence shows that Plaintiff failed to check and return phone messages, failed to open mail and process checks, and failed to send out tuition bills by certain deadlines.  Goodwin Aff. at 3-7.  Goodwin brought up these issues during a meeting with Plaintiff on July 13, 2004, and reminded Plaintiff that it was crucial for Plaintiff to communicate with Goodwin if she felt that she was falling behind in her job duties and ordered Plaintiff to ask for assistance when necessary.  Goodwin Aff. at 7.

On July 20, 2004, Goodwin discovered that Plaintiff had failed to open the mail for several days and that she had failed to process several checks (totaling $250,000) in a timely manner. Goodwin Aff. at 7.  On July 15, 2004, Plaintiff was reminded that the deadline for mailing out the tuition bills was July 26, 2004.  *Id.*  Despite the reminder, Plaintiff failed to send out the tuition statements by the deadline.  *Id.*

Accordingly, on July 28, 2004, Goodwin notified Plaintiff that her employment with the University was terminated. Goodwin Aff. at 7.[13]  Goodwin made the decision to terminate Plaintiff because "generally, speaking, she did not show marked improvement in following through on direction and respecting authority as stated in the probationary letter, and her insubordination and refusal to communicate with me resulted in her not completing her job duties." Goodwin Aff at 7.

---

[13]After discussing the issue with Goodwin, Pamela Lee agreed with Goodwin that Plaintiff should be terminated.  Lee Aff. at 3, Tab 4 to Defendant's Appendix to its MSJ.

Goodwin believed that Plaintiff's "failure to meet deadlines, get approval for overtime, and complete tasks in a timely manner were related to her disregard for me as a supervisor." *Id.*

The Court finds that the above-evidence clearly supports Defendant's articulated reasons for terminating Plaintiff and, therefore, Defendant has sustained its burden of articulating a legitimate, nondiscriminatory reason for its decision to discharge Plaintiff. Because the Defendant has met its burden, the presumption of discrimination created by Plaintiff's *prima facie* case drops from the case, and the burden shifts back to the Plaintiff who has the ultimate burden of persuasion on the issue of discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005).

**D.     Plaintiff's Ultimate Burden**

In order to sustain her ultimate burden, Plaintiff "must . . . offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citation and internal quotations omitted).

**1.     Pretext**

To succeed in demonstrating pretext, a plaintiff does not necessarily have to bring forth proof as to the defendant's true motive. As the Fifth Circuit has noted, "[e]vidence demonstrating the falsity of the defendant's explanation, taken together with the *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Sandstad v. CB Richard Ellis*, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000), *cert. denied*, 539 U.S. 926 (2003). Accordingly, an

ADEA claimant may avoid summary judgment by producing sufficient evidence to create an issue as to the defendant's discriminatory animus or, in some circumstances, the falsity of its stated nondiscriminatory reason for its adverse employment action. *Id.* A plaintiff who attempts to establish pretext based solely on the defendant's veracity is required to put forth evidence rebutting each one of the defendant's legitimate, nondiscriminatory reasons for the employment action at issue. 351.

Evidence tending to show that the employer's stated reason for its action is false will not always create an issue of material fact, however. *Crawford v. Formosa Plastics Corp., Louisiana*, 234 F.3d 899, 902-03 (5th Cir. 2000). As stated by the Supreme Court in *Reeves*, "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. For instance, if the plaintiff creates only a weak issue of fact as to whether the employer's proffered reason is untrue, and there is ample and uncontested independent evidence that no discrimination occurred, then the employer is entitled to summary judgment. *Id.* Whether a jury could reasonably infer discrimination from the evidence presented by the plaintiff, and thus whether summary judgment is appropriate, must be determined on a case-by-case basis and depends on a number of factors, including the strength of the plaintiff's *prima facie* case; the probative value of the evidence demonstrating that the employer's reason is false; and any other evidence supporting the employer's case that may properly be considered. *Crawford*, 234 F.3d at 903; *Price v. Fed. Express Corp.*, 283 F.3d 715, 721 (5th Cir. 2002).

As noted, Defendant asserts that it terminated Plaintiff because she was insubordinate and disrespectful to her supervisor, failed to follow directives from her supervisor, worked more than 90 hours of unapproved overtime, and neglected some of her job duties. In her attempt to show that

Defendant's asserted reasons for her termination were pretextual, Plaintiff argues that: (1) Defendant did not really consider Plaintiff to be insubordinate or disrespectful until just prior to her termination; (2) Defendant was aware of her overtime hours but only decided to make an issue out of it in order to justify her termination; and (3) her performance evaluations were getting better and thus her job performance could not have been substandard. Plaintiff has failed to sustain her ultimate burden to demonstrate that Defendant's asserted reasons are false and that her age was the real reason for her termination.

First, the Court notes that Plaintiff does not dispute any of the material facts relied upon by the Defendant to support their articulated legitimate, nondiscriminatory reasons for her termination. *See Chaney v. New Orleans Public Facility Mangt., Inc.,* 179 F.3d 164, 168 (5th Cir. 1999) ("In a case in which the employer has articulated a rational justification for terminating an employee, and the facts supporting that justification are not seriously disputed, the task of proving pretext becomes quite difficult."), *cert. denied*, 529 U.S. 1027 (2000). Specifically, Plaintiff does not dispute that she: (1) made the statements to Goodwin in response to her performance review and thereafter which Goodwin construed to be disrespectful and insubordinate; (2) repeatedly failed to comply with specific orders from Goodwin regarding overtime, completing various job duties, returning a signed copy of her review, attending mediation, and taking unapproved vacation days; (3) repeatedly failed to comply with the University's policy regarding overtime; and (4) failed to keep up with her job duties such as failing to check messages, and failing to send out complete financial information to students in a timely manner.

Instead of disputing the facts relied upon by the Defendant, Plaintiff attempts to downplay the seriousness of her actions and claims that the Defendant created these issues to justify her

termination.  Plaintiff argues that she was not insubordinate or disrespectful and contends that her supervisors were happy with her job performance.  For example, in explaining her rebuttal letter to Goodwin in response to her performance appraisal, Plaintiff claims that her comment that Goodwin did not have the "moral right" to evaluate her (contained in her rebuttal letter to her performance review) was not intended to be disrespectful but rather was a normal and routine musing "in the small familiar setting . . . at a religious school where moral and morality are a constant source of discourse among the inhabitants." Plaintiff's Response Brief at 4-5.  Despite Plaintiff's protestations to the contrary, Plaintiff's supervisors construed Plaintiff's letter, as well as her subsequent actions, as disrespectful, insubordinate and inappropriate.  *See* Goodwin Aff. at 3-4;  Lee Aff. at 2-3.  While Plaintiff's supervisors had been happy with her improvement in her job performance and her customer service skills – as reflected in her written review in March 2004 – Plaintiff's behavioral issues (which arose after Plaintiff's received her March 2004 review) "eventually outweighed the contributions that she was making to the Accounting Department," and Plaintiff's "negative feelings toward Ms. Goodwin interfered with her ability to do her job."  Lee Aff. at 3.

In summary, although Plaintiff has criticized Defendant's reasons for terminating her and has attempted to downplay the seriousness of her actions, Plaintiff has failed to come forward with adequate summary judgment evidence to rebut *each one* of Defendant's reasons, as is required by the Fifth Circuit to show pretext.  *Machinchick*, 398 F.3d at 351.  Other than her subjective beliefs – which are insufficient to create a fact issue –  Plaintiff has failed to demonstrate that Defendant's articulated reasons for her termination were false and were merely a pretext for discrimination.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).  As the Supreme Court has stated, summary judgment may be particularly appropriate where "the plaintiff create[s] only a weak issue of fact as

to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred" or where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Reeves*, 530 U.S. at 148.  Because Plaintiff has not produced sufficient evidence showing that Defendant's articulated reasons are "unworthy of credence," she has failed to show that her termination was a pretext for discrimination.  See *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### 2.        Mixed-Motive Alternative

Although Plaintiff has failed to show pretext, she can still survive summary judgment if she produces sufficient evidence showing that discrimination was a motivating factor in Defendant's decision to terminate her.  Under a mixed-motive theory, Plaintiff must produce some evidence, direct or circumstantial, of a discriminatory motivating factor in order to avoid summary judgment. *Rachid*, 376 F.3d at 312.

Plaintiff contends that the University "wanted to make the staff at Concordia University younger and more vigorous," and thus terminated her because of her advanced age.  Plaintiff notes that the University made several employment decisions around the time period during which she was discharged which resulted in a shift to a significantly younger staff within the Accounting Department. For example, Plaintiff points out that the University (1) transferred Pam Siegrist, Plaintiff's co-worker who was also of advanced age, to a different department; (2) hired Michael Westphal, a 22-year-old; and (3) replaced Plaintiff with Krista Smith, a twenty-something year-old.  Plaintiff argues that "a reasonable fact-finder could conclude that in a 3-person department, replacing 2 workers over 50 years of age with 2 workers under 25 years of age is evidence that age was a motivating factor, if not the a determining factor." Plaintiff's Brief at 14.

As already noted in the discussion of Plaintiff's *prima facie* case, the evidence shows that the University hired Krista Smith to replace Plaintiff and hired Michael Westphal, a college graduate with an accounting degree, to fill the newly-created position of General Ledger Accountant. See above notes 5 & 6.  Regardless, however, the fact that University hired two younger employees does not demonstrate by itself that age was a motivating factor in the Defendant's decision to terminate Plaintiff.  "The isolated fact that a younger person eventually replaces an older employee is not enough to permit a rebuttable inference that the replacement was motivated by age discrimination. If it were, it would transform the ADEA into something akin to a strict seniority protection system." *Tiemeyer v. Quality Pub., Inc.*, 144 F. Supp.2d 727, 734 (S.D. Tex. 2001) (internal citations and quotations omitted).

Notably, Plaintiff has failed to point to any disparate treatment within the Accounting Department.   There is no evidence in the record showing that younger employees were allowed to get away with similar insubordination and disrespect to their supervisors, similar unauthorized overtime, or similar neglect of their job duties.  In fact, Defendant points out that the only other person terminated from the business division in 2004 was a 34 year-old male employee.  Appendix to Defendant's MSJ, at Tab 4, p. 3.  While Pam Siegrist was transferred from the Accounting Department to the Financial Aid Department as part of a restructuring of the two departments, there is no evidence in the record that this transfer was a demotion or in any way an adverse employment action. *See* Goodwin Aff. at 1; Lee Aff. at 1.  "Without evidence of disparate treatment, it is difficult to maintain that a straightforward application of workplace policies and procedures was pretextual." *Chaney,* 179 F.3d at 168.

The Court also notes that the individual who recommended that Plaintiff be terminated from her position in July 2004 – Cynthia Goodwin – was the same individual who originally hired Plaintiff in the Fall of 2001.  Goodwin Aff. at 1, 7.  This situation gives rise to an inference that age discrimination was not the real motive behind Plaintiff's termination.  *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996).  As the Fifth Circuit has explained: "[c]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Id.* (internal quotations and citations omitted).

Plaintiff attempts to discredit Defendant's reliance on the same actor theory by arguing that Pamela Lee, not Cynthia Goodwin, was the individual who decided that Plaintiff should be terminated.  Plaintiff, however, ignores the fact that Pamela Lee was also involved in the decision to hire Plaintiff in 2001, and thus the same actor analysis applies to both Goodwin and Lee.[14] In light of the foregoing, the Court finds that Plaintiff has failed to establish an issue of fact as to whether her age was a motivating factor in the Defendant's decision to terminate Plaintiff's employment.

Plaintiff also speculates that she was terminated for financial reasons because the University was concerned with the health care costs of older employees, as well as a general concern over the University's finances.  Plaintiff points out that her 2004 performance review added several new categories to rate employees such as on an employee's friendliness, personal appearance, personality and relationship to staff and other departments.  Plaintiff claims that these new categories indicate that

---

[14]Cynthia Goodwin had recommended to Pamela Lee, her supervisor and Vice President of Business Affairs, to hire Plaintiff in 2001 and subsequently recommended to Lee to terminate Plaintiff in 2004. Tab 4 at 1, 3 to Appendix to Defendant's MSJ.

"management wanted to make the staff at Concordia University younger and more vigorous, since the clientele (i.e., college students) are younger than the general population."  Although Plaintiff may subjectively believe that the University was motivated by financial concerns or that the new performance review categories were a disguise to discriminate against older employees, Plaintiff can point to no evidence in the record to support these assertions. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430  (holding that "an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason").

Lastly, the Court notes that the University's employee demographics in the years 2004 and 2005 do not support Plaintiff's theory that the University was attempting to shift to a younger employee base. The evidence shows that as of September 2004, the University employed 170 employees, of which  111 were older than age 40, and 79 were older than age 50.  Lee Aff. at 3.  As of December 2005, the University employed 186 employees, of which 122 were older than age 40, and 84 were older than age 50.  *Id.*

In summary, the Court finds that Plaintiff has not met her ultimate burden of persuasion in this age discrimination case.  In opposing Defendant's Motion for Summary Judgment, Plaintiff has done little more than offer to the Court her own subjective belief that he was discharged because of her age which is insufficient to survive a summary judgment motion.  *Douglass*, 79 F.3d at 1430. Because Plaintiff has produced insufficient evidence to rebut Defendant's legitimate, non-discriminatory reasons for terminating her employment, Defendant's Motion for Summary Judgment in this case should be granted.

## IV.  RECOMMENDATION

The Magistrate Court RECOMMENDS that the District Court GRANT Defendants' Motion for Summary Judgment (Clerk's Doc. No. 14) in its entirety.   The Court FURTHER RECOMMENDS that the District Court enter judgment on behalf of the Defendants in this case.

## V.  WARNING

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).  The Clerks is ORDERED to mail each Party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 11th day of May, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE